ANDREW D. COOK

*v.*

GEORGE M. CHAPMAN and JARED R. COOK.

The bond given in this case, under the forty-sixth rule as it stood originally, upon issuing an injunction to restrain the further prosecution of certain attachment suits (which had reached judgment) in West Virginia, was declared forfeited, it appearing that the complainant had no equity whatever, but had imposed upon this court by instituting a suit in which the West Virginia defendants were the real actors, and whose sole object was to defeat the judgment obtained against them in West Virginia.

On petition of the defendant George M. Chapman, that the sureties in a bond given in this cause, under the forty-sixth rule, be ordered to pay the amount of the penalty of the bond into court, and that the petitioner may be paid thereout the amount of his damages sustained by reason of the injunction.

*Mr. T. N. McCarter*, for the petitioner.

*Mr. J. Henry Stone*, for the sureties.

THE CHANCELLOR.

On granting the injunction in this cause, the complainant was required to give bond to the defendant Chapman, according to the forty-sixth rule, with sufficient sureties, in the penalty of $75,000, and it was given accordingly.

Chapman subsequently answered the bill, and not long afterwards, the cause having proceeded no further than the answer, the bill was dismissed, with costs, by consent of the complainant.

The suit was brought to restrain Chapman from further prosecuting certain attachment suits which he had instituted against the Pittsburgh and Steubenville Railroad Company, in his own name, in West Virginia, and in which he had recovered a judgment for $298,081.26, the suits having been consolidated.

The bill alleged that those suits were founded upon pecuniary claims, of large amount in the aggregate, due to the complainant and the defendant Jared R. Cook, as the firm of J. R. Cook & Co., and which had been placed in Chapman's hands by them merely for collection; that Chapman had, by fraudulent conspiracy with the defendant Cook, and with a view to defrauding the complainant, obtained, from the former, assignments of the claims, and thereupon had brought the suits in his own name; and that he wholly denied that the complainant had any interest in the claims or suits; and the bill alleged that he was therein abetted by the defendant Cook, in pursuance of their combination to cheat the complainant.  The bill also alleged that Chapman had collected, in New York, another claim of large amount, belonging to the firm of J. R. Cook & Co., against J. Edgar Thomson, and had appropriated the money to his own use. It prayed that he might be restrained from proceeding in the suits in West Virginia, and from collecting the claims on which they were based, and might be required to account for the money received in the Thomson suit, and that a receiver might be appointed to manage the West Virginia suits, under the direction of this court, and that Chapman might be required to make all assignments necessary to invest the receiver with full power in the premises. An injunction was granted and a receiver was appointed, and Chapman was required to assign to him, which he did accordingly.

The question for determination is, whether the complainant was equitably entitled to the injunction. In construing the condition of the bond, the decision in *Smith* v. *Kuhl*, 11 *C. E. Gr.* 97, on the construction of such bonds, will be followed, the bond having been given since that decision was made. The inquiry then is, whether the application was made *bona fide*. It is clear, from the evidence, that the complainant sought, by means of the suit, to accomplish a purpose totally different from that which the proceedings themselves indicated. He, by his bill, prayed that Chapman and the defendant Cook might be restrained from prosecuting the suits in West Virginia, and that a receiver might be appointed to manage, control, collect and compromise the claims, judgments and decrees therein against the Pittsburgh and Steubenville Railroad Company, under the direction of this court; but the real object was to foil and defeat Chapman in the suits, to the end that the claims themselves, which the complainant says were just, might be utterly defeated. The complainant himself, in fact, neither expected nor sought any relief in the action. Except as he appeared upon the record, he was a stranger to the suit. The real defendants in the West Virginia suits were the Pennsylvania Railroad Company, and, beyond all dispute, this suit was theirs. It was merely one of the methods of defence which they adopted against the claims which Chapman was prosecuting. It was, in fact, not the complainant who applied for the injunction, but they who appeared in his garb, borrowed for the occasion. It was they who instituted the suit, and who employed and paid the solicitor and counsel who acted on behalf of the complainant. It was they who furnished the sureties in the bond under consideration, and it was they who furnished the funds for the receiver. They paid all the expenses of the suit, even furnishing traveling passes to the complainant when on business connected with it. When the solicitor whom they had employed to bring the suit declined further to act in it, it was they who undertook to employ another

Cook v. Chapman and Cook.

in his stead. It is not alleged that they were actuated by motives of benevolence. Their object is apparent, and is avowed. Their counsel, in his testimony, says that one of the reasons why they brought the suit was that, under the proceedings in it, there might be developed further testimony which would be of service to them in the West Virginia suit. He says that after he got from the complainant the letters, copies of which were appended to the bill, he sent printed copies of them to the railroad company's counsel in West Virginia, as the basis of an application to open the judgment to admit newly-discovered testimony, and that it was after that that this suit was begun. He says that he suggested this suit himself, and that it was really part of the proceedings in West Virginia. The complainant, in answer to questions as to the object of this suit, testifies that the counsel of the railroad company said that, if this suit was successful, it would "kill the Virginia suit," and that the effect would be that Chapman would be out of court, and would have to give up the suit. The object is further shown by the testimony of the complainant, in which he is corroborated by the counsel of the company, that if this suit was successful the complainant was to trust for his compensation, not to any legal demand upon the company, but to their generosity merely. It is true, he says, he understood, at one time, that he was, in case of success, to have $60,000 from the railroad company, but the counsel of the company positively denies that there was any ground for that or any such understanding, and the complainant testifies that the most of the conversation on the subject of the advantage which he would derive from the success of this suit was indefinite, and that the counsel of the railroad company said he would not promise to pay them (the defendant Cook and himself), or that he could not promise to pay them, one cent, and that they would have to trust to the generosity of the company. The defendant Cook never co-operated with the complainant in this suit.

But it is urged that the complainant, in placing himself in the hands of the company, was honestly seeking what he regarded as his right, and that this court, in granting the injunction and appointing the receiver, adjudged, on the facts then presented, that the complainant was entitled to the injunction.   The court, however, to guard against want of *bona fides* in the application, required the bond on granting the injunction, and it cannot be doubted that, had it been aware that the real defendants in the suit in West Virginia were the real complainants here; that it was they who were the real applicants for injunction, and that the suit was brought to subserve their purposes, and, though ostensibly brought merely to protect the complainant's interest in the large, and, so far as appears, just, pecuniary claims against the company therein mentioned, it was actually instituted to defeat those claims, and so to deprive not only Chapman, but the defendant Cook, of all benefit of them, to the sole advantage of the railroad company and the complainant, through an understanding between them, no injunction would have been granted.   " He who comes into a court of equity must come with clean hands."   The principle of this maxim is applicable to him who asks the aid of the court for sinister purposes.

It is worthy of remark that, in this case, according to the answer, the judgment which Chapman was, by the injunction, restrained from collecting, included a claim of about $100,000 in his favor, in nowise derived from the complainant or the defendant Cook, or the firm of J. R. Cook & Co., and in which Chapman alleges, in the answer, neither that firm nor either of the Cooks ever had any right or interest, and to which they never had any claim.   Again, the evidence shows an unsuccessful effort, on the part of the complainant, to induce the defendant Cook to further the object of this suit by answer and testimony, and that a solicitor was provided by the railroad company to prepare and put in that answer.

Whatever ground of complaint the complainant may have had against the defendants, and however meritorious his cause of action, his method of obtaining redress was reprehensible. He did not invoke the aid of this court for himself, but permitted others to come here in his name, and set up his grievances ostensibly, and only ostensibly, in his behalf, in order that they might thus obtain the means of defeating a judgment against them in which he claimed to have an interest adverse to them. And the result of this suit, if successful, was to have been, not his participation in the fruits of that judgment, but the defeat of the judgment; and he was to receive a gratuity at the hands of the judgment debtors in recognition of the service he had rendered them in enabling them to get rid of the judgment without paying it.

The bond should be declared to be forfeited, and the damages sustained by Chapman, by reason of the injunction, ascertained in this court. There will be a reference to a master accordingly. I do not deem it necessary to require the sureties to pay the amount of the penalty of the bond into court.